**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 14-cv-

RENEE LADWIG,

    Plaintiff,

v.

UNITED AIRLINES, INC.,

    Defendant.

_____

**COMPLAINT**
_____

COMES NOW Plaintiff, Renee Ladwig (f/k/a Renee Jeffrey) ("Plaintiff" or "Ms. Ladwig") by and through her counsel, Lisa R. Sahli, Attorney at Law, LLC, and respectfully alleges for her Amended Complaint as follows:

### I.  INTRODUCTION

1. This case involves sex discrimination by Defendant, United Airlines, Inc., and unlawful retaliation culminating in termination because Plaintiff opposed discrimination because of sex under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et. seq.* As a result of Defendant's discriminatory treatment and retaliation, Ms. Ladwig has suffered lost wages and benefits, humiliation, emotional distress, stress, anxiety, loss of enjoyment of life, and other significant injuries, damages and losses.

## II.     JURISDICTION AND VENUE

2.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343 and 1367(a). This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*

3.     The employment practices alleged herein to be unlawful were committed within the jurisdiction of the United States District Court for the District of Colorado. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## III.     ADMINISTRATIVE PREREQUISITES

4.     Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination and retaliation based on sex. On May 3, 2014, Ms. Ladwig received a Notice of Right to Sue from the EEOC. All administrative prerequisites to this suit have thus been satisfied.

## IV.     PARTIES

5.     Plaintiff Renee Ladwig is a citizen of the United States and a resident of the State of Colorado. At all times referenced herein, Ms. Ladwig was employed by United Airlines (hereinafter "Defendant" or "United").

6.     Defendant United Airlines, Inc. is a Delaware corporation having principal offices located at 233 S. Wacker Drive, Fourteenth Floor, Chicago, Illinois, and doing business in Colorado. At all times relevant to this Complaint, United, was an "employer" within the meaning of 42 U.S.C. § 2000e(b).

## V.     FACTUAL ALLEGATIONS

7.     At all times relevant to this Complaint, Renee Ladwig was a female employee of United Airlines.

8. At all times relevant, Defendant is a corporation employing more than 500 employees.

9. In or about September 2005, Ms. Ladwig commenced her employment as a Ramp Supervisor for United's Denver baggage operations. Ms. Ladwig had previously worked for United as a Ramp Service Employee ("RSE").

10. Throughout her many years of employment, until she was unlawfully retaliated against, then discharged on July 9, 2012, Ms. Ladwig at all times satisfactorily performed the requirements of her job and, for 2010, Ms. Ladwig's performance was rated "exceptional."

11. In or about February 2011, Defendant transferred Kenneth Brown to serve as Managing Director of Ramp Operations at Denver International Airport ("DIA"). At all times relevant, Mr. Brown supervised Ms. Ladwig and other ramp managers, Ramp Supervisors and RSEs.

12. At all times relevant, Mr. Brown viewed Ramp Operations as a "good ole boy's club," and male ramp employees received better treatment and opportunities under his leadership than did male employees.

13. On October 4, 2011, Kenny Browder, a strong, insolent and insubordinate male Ramp Service Employee ("RSE") assaulted Ms. Ladwig by kicking a chair which hit her forcefully in the right leg, injuring her and denting the desk of fellow Ramp Supervisor, Mark Kinslow, in violation of United's "zero tolerance" policy toward workplace violence.

14. That same day, Ms. Ladwig properly reported the assault by Mr. Browder to United's Denver Human Resources Manager, Dan Lloyd. Dan Lloyd was not in the office that day, so Ms. Ladwig sent him an e-mail requesting a meeting, stating that the incident was not only detrimental to her well-being, but was "discriminatory."

15. The following day, October 5, 2011, a United Wellness Supervisor met with Ms. Ladwig to document the injury.

16. Unfortunately, Mr. Brown was furious that Ms. Ladwig had reported the assault to Human Resources, and not directly to him, and immediately began a campaign of retaliation against her for her protected conduct in reporting the incident and discrimination to Human Resources.

17. On October 10, 2011, Mr. Brown thus placed Ms. Ladwig on involuntary leave and ordered her to participate in United's Employee Assistance Program.

18. Three days later, on October 13, 2011, Mr. Brown continued his retaliation against Ms. Ladwig by ordering that she not to return to work until further notice.

19. On or about October 13, 2011, Ms. Ladwig reported retaliation by Mr. Brown to Mr. Lloyd, at which point Mr. Lloyd informed her that Mr. Brown had taken over the investigation of the Kenny Browder incident and said words to the effect that, although he had objected to Mr. Brown taking over the investigation, his "hands were tied."

20. Soon after this conversation, Mr. Lloyd was demoted.

21. Although Ms. Ladwig had engaged no inappropriate conduct, on or about October 16, 2011, Mr. Brown further retaliated against Ms. Ladwig by prohibiting her from returning to her job until she satisfactorily completed an unnecessary "fitness for duty" evaluation.

22. Ms. Ladwig was not allowed to return to work until October 25, 2011, five days after she satisfactorily completed the unlawful and retaliatory fitness for duty evaluation.

23. On October 18, 2011, Ms. Ladwig met with Mr. Brown for the first time ever. During the meeting, Mr. Brown retaliated by insinuating that Ms. Ladwig was not cut out to be a supervisor because she had gone over his head in reporting the October 4, 2011 incident to

Human Resources. Mr. Brown then stated if he allowed her to come back to work, he was concerned she would not make a "good decision" if a similar incident were to occur, or if she would again go over his head.

24. During a subsequent meeting on October 24, 2011, Mr. Brown asked if Ms. Ladwig felt threatened. Ms. Ladwig said she felt threatened because Mr. Browder was a "walking time bomb," but she needed to get back to work. Mr. Brown advised Ms. Ladwig that she would have to be "forthcoming" in the future.

25. Although Mr. Browder had committed egregious misconduct, in violation of the law and United policy, he was not held out of service for as long as Ms. Ladwig and, on information and belief, was not required to undergo a fitness for duty evaluation.

26. After Ms. Ladwig returned to her job on October 25, 2011, Mr. Browder and other RSE's retaliated against her for reporting him by, *inter alia*, overturning chairs in the break room, calling her a "snitch," posting pictures of Mr. Kinslow's desk on Facebook, making derogatory remarks about her such as "watch out, bitch is coming," or "watch out, if you're near a chair, she'll call HR on you," defacing pictures on Ms. Ladwig's desk, and committing other hostile and offensive acts.

27. In or about January 2012, Ms. Ladwig was moved to supervise the baggage area known as "Cold Sort." After the transfer, Mr. Browder's friends in Cold Sort continued these hostile and retaliatory acts against Ms. Ladwig, and began, *inter alia*, pouring trash on her golf cart on a daily basis.

28. During a meeting with Mr. Brown and Ramp Manager, Kelly Holder, on or about January 13, 2012, Ms. Ladwig described the ongoing acts of retaliation and harassment by the RSEs, which hostile and abusive acts she had previously reported to Ms. Holder. When Mr.

Brown falsely denied that Ms. Holder had reported the unlawful harassment and retaliation by Mr. Browder and other male RSEs and, and Ms. Holder openly disagreed with his statement, Mr. Brown declared "this conversation is over," ending the meeting.

29. Although Ms. Ladwig had reported the hostile and offensive acts, and on or about January 20, 2012, reported escalating retaliation and harassment to United's Station Manager, Steve Jaquith, Mr. Jaquith responded that Ms. Ladwig should "not wear [her] emotions on [her] sleeve."

30. When the harassment threatened to escalate again and become violent in or about February 2012, Ms. Ladwig requested a meeting with Mr. Brown. Mr. Brown did not timely respond, and failed to make himself available for a meeting to discuss the ongoing retaliation and harassment from male RSEs.

31. United continuously ignored Ms. Ladwig's complaints and did nothing to remedy ongoing harassment and retaliation by the front line.

32. When Mr. Brown did not respond to her complaint in or about February 2012, Ms. Ladwig properly reported the ongoing retaliation, harassment and intimidation by the front line to United's Ethics & Compliance hotline. On February 15, 2012, Wayne Slaughter contacted Ms. Ladwig to take a verbal statement. During this conversation, Ms. Ladwig reported that she was being discriminated against, and stated that Ken Brown showed favoritism toward male ramp employees.

33. Ms. Ladwig's Ethics & Compliance complaint was forwarded to Adam McCoy, a Denver Human Resources employee for United. Mr. McCoy scheduled a "mediation" between Mr. Brown and Ms. Ladwig in March 2012, which was unsuccessful, and did nothing more.

34.   A mere two weeks later, on March 26, 2011, Mr. Brown issued Ms. Ladwig a false and contrived "failed" performance review, a "Final Warning Notice," and Performance Improvement Plan ("PIP").  Mr. Brown's criticisms centered around Ms. Ladwig's "communication and feedback skills," and her alleged violation of "confidentiality" for warning a fellow supervisor one day when Mr. Broward was angry to watch out, because he had kicked a chair at her.  Mr. Brown further expressed improper gender-based stereotypes by accusing Ms. Ladwig of letting "her personal emotions come out."

35.   Contrary to United's policies, the failed performance review and performance documents were issued without any prior notice that Ms. Ladwig's performance was in any manner deficient.

36.   On or about March 27, 2012, Ms. Ladwig advised Wayne Slaughter of the unwarranted failed performance review and PIP administered by Mr. Brown, and reported that she was extremely distraught by the outcome of her Ethics & Compliance complaint.

37.   On or about April 5 and 6, 2012, while Ms. Ladwig was on vacation, Ramp Supervisor, Alex Iglesius, assaulted Ramp Service Employee ("RSE"), John Samble, because both men were having a romantic relationship with fellow ramp supervisor, Karla Gratten.  Upon return from her vacation, Ms. Ladwig was advised that the investigation into the incident was closed by Ken Brown, who knew there were witnesses but failed to interview them.

38.   RSE's on the front line were upset that Mr. Iglesius avoided discipline despite physically assaulting one of them on April 5 and 6, 2012.

39.   Although Mr. Iglesius' conduct was a blatant violation of United's "zero tolerance" policy toward workplace violence, Mr. Brown later promoted Mr. Iglesius to an Upgrade Area

Manager position, an informal upgrade position which provides training and experience to individuals who seek promotion to a Ramp Manager position.

40. Meanwhile, Mr. Brown disqualified female Ramp Supervisor, Jaymee Barrington, from the Upgrade Area Manager position because she pointed out that the positions seemed to be given only to men. Mr. Brown then began a course of retaliation against Ms. Barrington, which was nearly identical to his retaliation against Ms. Ladwig, by issuing her a false negative performance review and threatening a PIP.

41. Mr. Brown went out of his way to protect Mr. Browder, Mr. Iglesius and other males who committed egregious workplace misconduct, while retaliating against Ms. Ladwig and Ms. Barrington for engaging in conduct protected by Title VII.

42. United finally terminated Mr. Browder in or about May 2012, after he called fellow RSE, Reggie Demps (a male) "nothing but a lazy piece of shit nigger" who "should have died" with his son.[1]

43. However, further demonstrating his unlawful preferential treatment of male ramp employees, Mr. Brown later rehired Mr. Browder and gave him a special assignment at United Express where he would be protected from retaliation by ramp employees who were (understandably) offended by his racist statement to Mr. Demps.

44. In or about June 2012, United reopened the investigation into the Iglesius-Samble fights. Mr. Brown was angry that his investigation of the incident was under review, and further retaliated against Ms. Ladwig and Ms. Barrington by falsely claiming that they had withheld information about witnesses to the incidents.

---

[1] Mr. Demps' son died in a tragic automobile accident the previous year.

45. Neither Ms. Ladwig nor Ms. Barrington were on duty when the fights occurred, and this was a blatant lie by Mr. Brown to transfer blame from himself to female employees who he was actively retaliating against.

46. On or about July 1, 2012, Ms. Ladwig asked Mr. Brown if her PIP would be concluded on June 30, 2012, as scheduled. Mr. Brown advised Ms. Ladwig to speak to her supervisor, Jim Servedio.

47. On or about July 3, 2012, when Ms. Ladwig asked Mr. Servedio about it, he responded that she was "right on track" with the PIP, but only Mr. Brown could release her from it. Mr. Servedio further confided that Ms. Ladwig had gotten "screwed" on leadership surveys Mr. Brown had used as a pretext for the PIP.

48. Mr. Brown later told Ms. Ladwig she would not be released from the PIP until after the upcoming mid-year leadership surveys in mid-July.

49. Mr. Brown then terminated Ms. Ladwig's employment, before the mid-year leadership surveys were completed, on July 9, 2012.

50. Mr. Brown's acts and conduct were at all times willful and/or committed with reckless disregard of Ms. Ladwig's federally protected rights under Title VII of the Civil Rights Act of 1964.

## VI. STATEMENT OF CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**(Disparate Treatment in Violation of Title VII of the Civil Rights Act of 1964)**

51. Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

52. As a female, Ms. Ladwig was at all times a protected person under Title VII of the Civil Rights Act of 1964.

53. As demonstrated by her several years' successful employment as a Ramp Supervisor for United, and her exceptional performance rating for 2010, Ms. Ladwig was well qualified for her position, and consistently performed the requirements of her position in a satisfactory manner.

54. Notwithstanding her exceptional performance, Defendant treated Ms. Ladwig less favorably than similarly situated male Ramp Supervisors by subjecting her to unfair scrutiny, disparate discipline, and by falsely failing her on a performance review, in part because she showed emotion when Defendant failed to address her claims of ongoing retaliation and harassment, then by terminating her employment for false and pretextual reasons.

55. Defendant treated Ms. Ladwig less favorably than other similarly situated Ramp Supervisors, due to her gender, while protecting male Ramp Supervisors such as Alex Iglesius, who committed egregious workplace misconduct.

56. Defendant further went out of its way to protect Kenny Browder from retaliation after he made an unlawful and extremely offensive racist remark to Reggie Demps, while deliberately ignoring Ms. Ladwig's complaints of retaliation and harassment by male RSEs after she reported Mr. Browder's assault.

57. Defendant is liable for the acts and omissions of its agents and employees. Defendant, either directly or by and through its designated agents, discriminated against Ms. Ladwig due to her gender.

58. Defendant's acts and conduct in discriminating against Ms. Ladwig were at all times willful and/or committed with reckless disregard for Ms. Ladwig's federally protected rights under Title VII of the Civil Rights Act of 1964.

59. As a consequence of Defendant's unlawful conduct, Ms. Ladwig has sustained significant economic, consequential and compensatory damages.

60. Defendant's unlawful discriminatory conduct was the proximate cause of Ms. Ladwig's injuries, damages and losses.

## SECOND CLAIM FOR RELIEF
### (Retaliation in Violation of Title VII of the Civil Rights Act of 1964)

61. Plaintiff hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

62. Starting on or about October 4, 2011, Ms. Ladwig engaged in protected conduct by reporting discriminatory and physically threatening conduct by male RSE, Kenny Browder.

63. As soon as Ms. Ladwig reported Mr. Browder's unlawful and discriminatory conduct, Defendant began a pattern of retaliatory conduct by prohibiting her from returning to work until after she underwent an unnecessary Fitness for Duty evaluation, returning Mr. Browder to work sooner and without a Fitness for Duty evaluation, ignoring her complaints of retaliation and ongoing harassment by Mr. Browder and other male RSEs, falsely downgrading her performance on her 2011 year end performance review, and trumping up false and pretextual reasons to discipline her and place her on a PIP, then terminating her employment without cause on July 9, 2012.

64. Defendant's asserted reasons for disciplining and terminating Ms. Ladwig were a pretext for retaliation.

65. Defendant is liable for the acts and/or omissions of its agents and employees. Defendant, either directly or by and through its designated agents, retaliated against Ms. Ladwig because of her protected conduct in opposing discrimination under Title VII.

66. Defendant's acts and conduct in retaliating against Ms. Ladwig were at all times willful and/or committed with reckless disregard for Ms. Ladwig's federally protected rights under Title VII of the Civil Rights Act of 1964.

67. As a consequence of Defendant's illegal and retaliatory conduct, Ms. Ladwig has sustained significant economic, consequential and compensatory damages.

68. Defendant's unlawful retaliatory conduct was the proximate cause of Ms. Ladwig's injuries, damages and losses.

WHEREFORE, Plaintiff Renee Ladwig respectfully requests that this Court enter judgment in her favor and against Defendant, and award her all relief as allowed by law, including, but not limited to the following:

a. Declaratory relief and injunctive relief, as appropriate;

b. Back pay, front pay and other actual economic damages as established at trial;

c. Compensatory damages, including, but not limited to past and future non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses;

d. Punitive damages for all claims as allowed by law in an amount to be determined at trial;

e. Pre-judgment and post-judgment interest at the highest lawful rate;

f. Attorney's fees and costs; and

g. Such further relief as justice requires.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 3rd day of August, 2014.

                    LISA R. SAHLI, ATTORNEY AT LAW, LLC

                    *s/Lisa R. Sahli*
                    Lisa R. Sahli
                    333 W. Hampden Ave., #420C
                    Englewood, Colorado 80110
                    (720) 545-1690
                    Sahlilaw@gmail.com

                    ATTORNEY FOR PLAINTIFF